**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000886
13-NOV-2019
09:42 AM**

NO. CAAP-18-0000886

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF AC

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 17-00222)

ORDER OF DISMISSAL FOR LACK OF APPELLATE JURISDICTION
(By: Ginoza, Chief Judge, Fujise and Hiraoka, JJ.)

Appellant Mother (**Mother**) appeals from the "Orders
Concerning Child Protective Act", filed on October 10, 2018, in
the Family Court of the First Circuit (**Family Court**),[1] which
ordered placement of Mother's and Father's child, AC, under
family supervision with Father in California after AC attains
medical stability. Mother also challenges the "Findings of Fact
and Conclusions of Law" entered on December 4, 2010 by the Family
court.

**I. Appellate Jurisdiction**

Mother's appeal from the "Orders Concerning Child
Protective Act" was untimely.[2] It thus appears from the record

---

[1] The Honorable Bode A. Uale presided.

[2] Mother's Notice of Appeal, filed on November 13, 2018, is untimely
because it was filed 34 days after entry of the "Orders Concerning Child
Protective Act" filed on October 10, 2018, in violation of the 15 day time
limit in Rule 3 of the Rules Expediting Child Protective Appeals (**RECPA**) and
(continued...)

that Mother's counsel was ineffective in failing to timely file an appeal in this case. In termination of parental rights cases, the Hawai'i Supreme Court has held that "the proper inquiry when a claim of ineffectiveness of counsel is raised in a termination of parental rights case is <u>whether the proceedings were fundamentally unfair as a result of counsel's incompetence</u>." <u>In re RGB</u>, 123 Hawai'i 1, 25, 229 P.3d 1066, 1090 (2010) (emphasis added) (citations omitted). In particular, the Hawai'i Supreme Court "adopt[ed] a fundamental fairness test, rather than importing criminal law concepts directly[.]" <u>Id.</u>

We must determine whether we have appellate jurisdiction. Given the standard adopted in <u>In re RGB</u>, we must review whether the proceedings in this case were fundamentally unfair due to the failure by Mother's counsel to timely file an appeal. Thus, in essence, we must review Mother's claims of error by the Family Court.

## II. Review of Asserted Errors

Mother challenges Findings of Fact (**FOF**) Nos. 46, 50, 55, 56, 57, 59, 64, and 72 and Conclusions of Law (**COL**) Nos. 9, 10, 11, and 12. Mother contends that her points of error "relate to three overarching errors by the court that exceeded the bounds of reason:" (1) that because of her mental illness, Mother could not be trusted; (2) that through Father's limited interaction with his therapist, Richard Myatt (**Myatt**), LMFT, of the Fontana Counseling and Recovery Center, Father alleviated the safety concerns raised by the allegations of domestic abuse; and (3) that removing the child from a safe and appropriate placement

---

[2](...continued)
the 30 day time limit in Rule 4(a)(1) of the Hawai'i Rules of Appellate Procedure (**HRAP**). The RECPA apply to this case and RECPA Rule 3 provides that when an appeal is permitted by law, the notice of appeal shall be filed within 15 days after entry of the judgment or appealable order or decree. If the appeal is not filed within this period, "but is otherwise filed within the time permitted by Rule 4 of the Hawai'i Rules of Appellate Procedure, the appeal shall not be dismissed for lack of jurisdiction[.]" RECPA Rule 3. HRAP Rule 4(a)(1) provides that the time for filing a civil appeal is "30 days after entry of the judgment or appealable order." Under either standard, Mother's Notice of Appeal was not timely filed.

where he had frequent interaction with his Mother to whom he was significantly bonded was in the best interest of the child.

Mother does not provide specific arguments as to each challenged FOF and COL.  Instead, Mother argues that (1) her claim that Father abused her was not a product of her mental health issues, which were diagnosed as grandiose or delusional, and her injuries were substantiated by another witness; (2) "given Father's documented history of drug abuse, it stands to reason that Father may have well engaged in drug-fueled violent behavior against Mother"; (3) Father's safety issue of domestic abuse was not addressed by four non-specific therapy sessions when domestic violence/anger management classes usually span 12 to 16 weeks; (4) it was not appropriate to move a medically fragile child from a place where he could interact with Mother to an out-of-state placement; (5) Mother would not have fair access to AC to continue reunification efforts; and (6) the Family Court should show a preference to in-state placement under the Child Protective Act as long as the current placement is safe and appropriate.

(1) and (2)  The Family Court did not find Mother's allegations of domestic abuse stemmed from her mental health issues.  The Family Court did not make any specific finding regarding Mother's allegation of domestic abuse, other than mentioning that it had a grave concern about the domestic abuse allegations but noted there was no prior finding of domestic abuse related to issuance of a temporary restraining order against Father and there was a lack of any police reports related to the alleged incidents.  FOF No. 71 states Mother's witness was a credible witness, "but his testimony was not persuasive nor [sic] helpful to the Court in making its decision."  Mother does not challenge FOF No. 71.  Mother cites no authority or evidence in the record to support a conclusion that Father committed drug-fueled violent behavior based on his history of substance abuse.

(3)  As part of his service plan, Father was ordered to participate in, inter alia, domestic violence/anger management

3

education. However, after Father participated in four general therapy sessions, Myatt concluded in his professional opinion that Father did not have a history or capability of domestic violence based on Father's history, behavior, and body language, as well as his attitude toward AC and his family and family dynamics. Father's psychological evaluation stated that although Father denied all allegations of domestic violence, a "State-Trait Anger Expression Inventory, Second Edition (STAXI-2)" was administered to gain a better understanding of the intensity of Father's anger, how often he experiences anger, and how he expresses his feelings of anger. "The STAXI results did not identify any areas of concern with state or trait anger." A Department of Human Services (**DHS**) social worker, Lena Kakehi (**Kakehi**), testified that Father's service plan was based on either parent's initial reporting or allegations and DHS relies upon service providers to determine how long or if there is a need for formal classes. Kakehi testified that through Father's assessment, Myatt indicated it was not necessary for Father to complete formal domestic violence/anger management classes, and thus DHS was satisfied Father had addressed any domestic violence/anger management problem.

**(4)**, **(5)**, and **(6)** In approving AC's placement with Father, the Family Court ordered that foster custody continue until AC was "medically stable and is able to be placed in Father's home[.]" The Family Court concluded that "[i]t is in the best interests of the Child to be placed in a medical facility in California and to be reunited with Father after the Child becomes medically stable." Mother cites no authority to support her claim that Hawaii Revised Statutes (**HRS**) Chapter 587A, the Child Protective Act, demonstrates a legal preference for in-state placement over out-of-state placement when considering a child's best interest. "HRS § 571-46(a) provides standards that apply to a court's custody decision in proceedings involving a dispute as to the custody of a minor child[.]" A.A. v. B.B., 139 Hawai'i 102, 106, 384 P.3d 878, 882 (2016). None of

4

the factors in HRS § 571-46(a) state there is a preference for in-state placement. The Family Court also ordered "Mother may have visitation via skype like the father had here in Hawai'i." Further, the Family Court ordered that the courtesy worker provided as part of family supervision was to work with Father to provide Mother with visitation if she was in California. Therefore, we disagree with Mother's claim that she would not have fair access to AC to continue reunification efforts.

The Family Court did not abuse its discretion by ordering AC to be placed in a medical facility in California and to be reunified with Father when AC becomes medically stable. "Generally, the family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion." Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawai'i 183, 189, 20 P.3d 616, 622 (2001)). "Preponderance of the evidence" shall be the standard of proof required in any proceeding, unless otherwise specified. HRS § 587A-4 (2018).

AC was diagnosed with a medical condition requiring 24-hour medical care and with an average life expectancy of two to three years. See FOF No. 32 and 36. At the time of the placement hearing on September 27, 2018, AC was approximately 18 months old. See FOF No. 27. Kakehi testified that a Multi-Disciplinary Team (**MDT**) believed it was in AC's best interest to have contact and a connection with a parent and, thus, the MDT recommended AC be allowed to move to California where Father lived. Father is bonded to AC and AC gets very excited when he sees Father and smiles and consistently stares at Father. The Family Court determined that Father was truthful about his substance abuse issues, was cooperative with DHS and all service providers, was receptive to information about AC's medical condition and showed appropriate understanding of the severity of AC's condition, was able to find service providers near his home in California, interacted appropriately with AC in-person and during video conference visits, and has insight into his problems

5

and exhibits willingness and ability to take the steps necessary to provide a safe family home.  See FOF No. 73.

Mother's psychological evaluation, dated November 30, 2017, stated her denial of her mental health symptoms and need for treatment increased the risk of neglect if she is AC's primary caretaker.  Mother testified she does not believe she has any mental health issues but admits she sees a psychiatrist once every two months.  Mother also claimed that during her visits AC learned phonics and put together sounds to answer her questions, he shouts "hugs" while watching a DVD, and he can read words and sound them out, while admitting AC cannot breathe through his mouth due to a tracheal tube in his neck.  Mother also stated AC said "yeah" and "mom" when he was one year-old.  Mother believes she could care for AC by herself because she used to own a daycare.  A "Report to Court" by DHS, signed by Kakehi and DHS Supervisor Pamela Nakanelua, dated July 9, 2018, states that visits with Mother continued to be challenging because she failed to follow directives to stay clear of AC's medical equipment and had difficulty regulating her emotions when she becomes upset.  The report also states Mother appeared to not understand the severity of AC's condition and had unreasonable expectations of his limitations and specific medical condition.  Mother attempted to put things in AC's mouth because she believed he was teething despite the fact he had a gastronomy tube and tracheal tube and she was informed during prior visits it was not safe to put things like toothpaste or orajel into his mouth.  Kakehi testified that during supervised visits Mother would attempt to touch or hold AC causing tubes to disconnect and alarms to sound and Mother failed to recognize he was in distress.

Based on the record in this case, the Family Court did not err in determining that: Mother was not willing and able to provide a safe family home, even with the assistance of a service plan, because she was unable to recognize that her mental health issues affected her ability to care for AC and that she could not care for AC, even with supervised visits in a medical facility;

and Father was willing and able to provide AC with a safe family home with the assistance of a service plan because he was addressing his safety concerns, recognized the severity of AC's condition, and demonstrated appropriate interaction with AC.

Under these circumstances, we conclude the proceedings in this case were not fundamentally unfair as a result of the failure by Mother's counsel to timely file an appeal.

Therefore, IT IS HEREBY ORDERED that, due to the untimely filing of Mother's notice of appeal, this appeal is dismissed for lack of appellate jurisdiction.

DATED: Honolulu, Hawai'i, November 13, 2019.

Chief Judge

Associate Judge

Associate Judge